## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| JANE DOE, *et al.*, | ) | Case No. 1:19-cv-02901 |
| | ) | |
| Plaintiffs, | ) | Judge J. Philip Calabrese |
| | ) | |
| v. | ) | Magistrate Judge David A. Ruiz |
| | ) | |
| CITY OF MANSFIELD, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## <u>OPINION AND ORDER</u>

This case presents close and difficult questions arising from a workplace dispute in a police department between a supervisor and her subordinate that escalated to the point where a public records request resulted in the disclosure of deeply personal and embarrassing information about the supervisor's childhood sexual history, leading to serious trauma and injury. Plaintiffs Jane Doe and her husband John Doe claim Defendants the City of Mansfield; David Remy, the City's Human Resources Director; and Freeman Nixon, a police officer in the Mansfield Police Department, violated her rights protected by the federal Constitution and State law by publicly disclosing that information about her sexual history. The parties move for summary judgment on their respective claims and defenses.

One difficulty in this case arises from the competing standards the Ohio Supreme Court and the Sixth Circuit use to evaluate the parties' respective claims and defenses. In cases such as this, which may be somewhat unusual, those differing standards will place officials in a difficult position—between the Scylla of State public

records law and the Charybdis of constitutional federal privacy rights.  Ultimately, the Ohio Supreme Court and the Sixth Circuit might need to settle on a common standard to govern primary conduct going forward (the Ohio Supreme Court adopted its standard after the events at issue).  But that task does not fall to the Court in this case.  Instead, the Court must follow Sixth Circuit precedent on matters of federal law and the Ohio Supreme Court on State law, wherever they lead.  For that reason, and those that follow, the Court **DENIES** Plaintiff's motion for partial summary judgment (ECF No. 43; ECF No. 57); **GRANTS IN PART AND DENIES IN PART** the City's and Mr. Remy's motion for summary judgment (ECF No. 49); and **GRANTS IN PART AND DENIES IN PART** Officer Nixon's motion for summary judgment (ECF No. 50; ECF No. 51).

Also before the Court is the City of Mansfield's and Mr. Remy's motion for judgment on the pleadings.  Previously, the Court ordered that their motion for judgment on the pleadings be fully incorporated into their motion for summary judgment.  (Minute Entry, Jan. 28, 2021.)  Accordingly, the Court **DENIES AS MOOT** the motion for judgment on the pleadings (ECF No. 32).

## STATEMENT OF FACTS

The parties largely agree on the following events.  Defendant Freeman Nixon has been employed by the Mansfield Police Department for about five and a half years as a patrol officer.  (ECF No. 47, PageID #379; ECF No. 51-3, PageID #542.)  Officer Nixon has known Plaintiff Jane Doe since he started working there.  (ECF No. 47, PageID #380; ECF No. 51-3, PageID #543; ECF No. 43-2, PageID #277.)  At some point, Ms. Doe became a sergeant and was Officer Nixon's supervisor.  (*Id.*)  The two

had a difficult relationship.  (ECF No. 43-2, PageID #278–79, #281; ECF No. 57-2, PageID #693–94.)

As his supervisor, Sgt. Doe approached Officer Nixon "with a picture of [him] on her cell phone with a penis drawn on it, made some comments and then went on her way."  (ECF No. 47, PageID #381; ECF No. 51-3, PageID #544; ECF No. 43-2, PageID #279; ECF No. 57-2, PageID #693; *see also* ECF No. 46, PageID #362–63 ("[T]hey had drawn a humongous penis just over his . . . body."); ECF No. 51-2, PageID #526.)  The picture was part of a group text in which Officer Nixon was not included.  (ECF No. 47, PageID #381; ECF No. 51-3, PageID #544; ECF No. 46, PageID #362; ECF No. 51-2, PageID #525.)  He does not recall what remark Sgt. Doe made when she showed him the photo, but testified that she brought it to him in "a joking manner" rather than in a manner of concern.  (ECF No. 47, PageID #382; ECF No. 51-3, PageID #545.)  Sgt. Doe testified that they both laughed over the photo and that Officer Nixon claimed whoever sent it was "just jealous."  (ECF No. 46, PageID #363; ECF No. 51-2, PageID #526.)  Officer Nixon did not immediately report the incident to a supervisor out of "fear of retaliation."  (ECF No. 47, PageID #382; ECF No. 51-3, PageID #545.)  Sgt. Doe testified that she was reprimanded for not sending the photo up the chain of command.  (ECF No. 46, PageID #363; ECF No. 51-2, PageID #526.)

A couple months later, in June 2018, Officer Nixon and Sgt. Doe had another incident at work in which she wrote up Officer Nixon for insubordination after he used department resources to wash his car, allegedly in violation of a direct order

from Sgt. Doe.  (ECF No. 47, PageID #383; ECF No. 51-3, PageID #546; ECF No. 43-2, PageID #281; ECF No. 57-2, PageID #694.)   The charged offense was cause for termination, so Officer Nixon figured reporting the earlier incident regarding the altered photograph "wasn't going to stop what she was already doing to me." (ECF No. 47, PageID #384; ECF No. 51-3, PageID #547; ECF No. 43-2, PageID #281; ECF No. 57-2, PageID #694.) Officer Nixon avers that Sgt. Doe lied about the car washing offense and was upset that he "could have been fired for something [he] didn't do." (ECF No. 47, PageID #385; ECF No. 51-3, PageID #548; ECF No. 43-2, PageID #282; ECF No. 57-2, PageID #695.)  The offense was eventually lowered to misuse of public property.  (ECF No. 47, PageID #385; ECF No. 51-3, PageID #548.)

### A.      The Public Records Request

After reporting the earlier incident involving the photograph, Officer Nixon was not informed how it was resolved or whether Sgt. Doe had been disciplined in connection with it, so he made a public records request for his personnel file and Sgt. Doe's.  (ECF No. 43-5, PageID #342; ECF No. 57-5, PageID #766; ECF No. 47, PageID #386 & #394; ECF No. 51-3, PageID #549 & #557; ECF No. 43-2, PageID #283; ECF No. 57-2, PageID #696.)  He also requested his file to verify its accuracy. (ECF No. 47, PageID #394; ECF No. 51-3, PageID #557.)  He made both requests on December 10, 2018.  (ECF No. 43-5, PageID #342; ECF No. 57-5, PageID #766; ECF No. 48, PageID #410, 422; ECF No. 51-4, PageID #573.)

The public records request went to Defendant David Remy, who is a lawyer admitted to practice in the State of Ohio.  (ECF No. 43-3, PageID #304.)  He was the Human Resource Director for the City of Mansfield from December 2011 to December

4

2018. (*Id.*) Before that, from 2001 to November 2011, he was the City Law Director. (*Id.*) And before that, starting in 1993, he worked as the chief prosecutor for the City. (*Id.*) Mr. Remy testified that, when one employee requests another employee's personnel file, the human resources department undertakes a review and redaction process, pursuant to City policy. (ECF No. 43-3, PageID #305; ECF No. 57-3, PageID #721.) He reviewed all requests for personnel files that came to the office and personally determined whether redactions were appropriate in his capacity as human resources director. (ECF No. 43-3, PageID #306; ECF No. 48, PageID #411; ECF No. 51-4, PageID #574.)

One document contained in Sgt. Doe's file was the result of a polygraph interview from a prior job application to the Ohio State Highway Patrol. (ECF No. 47, PageID #386–87; ECF No. 43-2, PageID #283–84.) That document contained details about abuse in her relationship with her former fiancé; a suspension from college due to low grades; and traffic citations omitted from her employment application. (ECF No. 43-6, PageID #344.) It also contained the disclosure at issue (ECF No. 47, PageID #387–88; ECF No. 51-3, PageID #549–50; ECF No. 43-2, PageID #285; ECF No. 57-2, PageID #698; ECF No. 43-6, PageID #344; ECF No. 57-6, PageID #768; ECF No. 46, PageID #376; ECF No. 51-2, PageID #539) and was placed in Sgt. Doe's personnel file as part of an investigative packet the police department collects when it hires someone (ECF No. 43-3, PageID #308; ECF No. 57-3, PageID #724).

Mr. Remy did not consult with anyone while reviewing Ms. Doe's file to respond to Officer Nixon's request. (ECF No. 43-3, PageID #306; ECF No. 48, PageID #411;

ECF No. 51-4, PageID #574.)  Sometimes, if an unusual situation came up, he consulted the Law Department, though he did not do so here.  (ECF No. 43-3, PageID #306, 311–12; ECF No. 57-3, PageID #728–79; ECF No. 48, PageID #411; ECF No. 51-4, PageID #574.)

### B.    The Disclosure at Issue

Mr. Remy fulfilled Officer Nixon's request by December 17, 2018, a week after Officer Nixon made the request.  (ECF No. 48, PageID #410, #423; ECF No. 51-4, PageID #573, #586.)  Officer Nixon retrieved both files and reviewed their contents. (ECF No. 47, PageID #386; ECF No. 51-3, PageID #549; ECF No. 43-2, PageID #283; ECF No. 57-2, PageID #696; ECF No. 48, PageID #413; ECF No. 51-4, PageID #576.) Sgt. Doe's personnel file contained the following statement regarding her sexual history when she was a minor:

Between the ages of 7 and 18, ███████████████████████████
████████████████████████████████████████████ .

(ECF No. 43-6, PageID #344; ECF No. 57-6, PageID #768.)  According to Sgt. Doe, this behavior resulted from sexual abuse, though she concedes that a reader of that information from the polygraph might not have known as much and that she never told anyone about prior sexual abuse.  (ECF No. 43-4, PageID #326; ECF No. 57-4, PageID #746.)

When reviewing Sgt. Doe's file, Mr. Remy read this information.  (ECF No. 43-3, PageID #309; ECF No. 57-3, PageID #726.)  He viewed it as "an unflattering incident in [Sgt. Doe's] life" (*id.*) that occurred when she was a minor (ECF No. 43-3, PageID #311; ECF No. 57-3, PageID #728), but determined that Ohio law did not

provide an exception for its disclosure as a public record (ECF No. 43-4, PageID #312–13; ECF No. 57-3, PageID #729–30; ECF No. 53, PageID #632; *see also* ECF No. 48, PageID #412; ECF No. 51-4, PageID #575).  Before releasing Sgt. Doe's personnel file without redactions, Mr. Remy gave no consideration to federal law beyond the requirements of the Health Insurance Portability and Accountability Act of 1996.  (ECF No. 43-3, PageID #313, #315.)  Nor did he advise Officer Nixon not to share the contents of the personnel files with anyone else.  (ECF No. 48, PageID #412; ECF No. 51-4, PageID #575.)

In his testimony, Officer Nixon said that, when he read this information, he became concerned that Sgt. Doe might be unfit for her position as a police officer. (ECF No. 47, PageID #395; ECF No. 51-3, PageID #558.)  Other parts of Sgt. Doe's personnel file also concerned Officer Nixon about her fitness to serve as a police officer.  (ECF No. 47, PageID #395–98; ECF No. 51-3, PageID #558–62; ECF No. 43-2, PageID #290–93; ECF No. 57-2, PageID #703–05.)  In his opinion, "I don't see that she should have been hired originally."  (ECF No. 47, PageID #399; ECF No. 51-3, PageID #562.)

Officer Nixon showed the document to one sergeant and two officers in the department.  (ECF No. 47, PageID #388, #389; ECF No. 51-3, PageID #551, #552; ECF No. 43-2, PageID #295, #297; ECF No. 57-2, PageID #707, #709; *see also* ECF No. 46, PageID #358; ECF No. 51-2, PageID #521.)  First, he showed the file to the sergeant who helped him with the public records request and who had later asked about Plaintiff's file.  (ECF No. 43-5, PageID #342; ECF No. 57-5, PageID #766; ECF

7

No. 47, PageID #394, #398; ECF No. 51-3, PageID #557, #561.)  Officer Nixon brought the disclosure at issue to the sergeant's attention, along with other information he found concerning.  (ECF No. 47, PageID #398; ECF No. 51-3, PageID #561.)  Officer Nixon says he did so out of concern because Sgt. Doe appeared as an offender, not a victim, and ███████████████████████████.  (ECF No. 43-2, PageID #293; ECF No. 57-2, PageID #705.)

Officer Nixon then showed the file to two officers simultaneously, but does not recall whether he pointed out to them the specific information at issue.  (ECF No. 47, PageID #390; ECF No. 51-3, PageID #553; ECF No. 43-2, PageID #288; ECF No. 57-2, PageID #701.)  He testified that he showed the officers the file after one asked him about it.  (ECF No. 47, PageID #392; ECF No. 51-3, PageID #555.)  One of those officers indicated to Officer Nixon that he should not share publicly the disclosed information.  (ECF No. 47, PageID #393; ECF No. 51-3, PageID #556.)  After that, Officer Nixon did not show the file to anyone else at the department.  (ECF No. 47, PageID #393; ECF No. 51-3, PageID #556.)  Even when another officer later approached him and asked about Sgt. Doe's personnel file, Officer Nixon "never gave an answer."  (ECF No. 47, PageID #400; ECF No. 51-3, PageID #563; ECF No. 43-2, PageID #294; ECF No. 57-2, PageID #703.)

After Sgt. Doe filed suit, Officer Nixon told his friend about the lawsuit.  (ECF No. 43-2, PageID #289; ECF No. 57-2, PageID #702.)  He also told "some close family members" an "all inclusive story from the beginning to the end of what happened."  (ECF No. 43-2, PageID #294–95; ECF No. 57-2, PageID #706–07.)

### C.     The Aftermath

Sgt. Doe testified that when she learned about Officer Nixon's disclosure to her colleagues, she "literally lost my mind." (ECF No. 43-4, PageID #329; ECF No. 57-4, PageID #750.)  When she contacted her supervisor after learning about the disclosure, he told her to leave work and go home, which she did.  (ECF No. 43-4, PageID #330; ECF No. 57-4, PageID #751.)  She called her husband from the car and "got through a conversation with him" "because of course he didn't know" about the information disclosed.  (*Id*.)  She hyperventilated on the way home and testified that "the next six weeks of my life is a complete blur."  (ECF No. 43-4, PageID #330–31; ECF No. 57-4, PageID #751–52.)

She visited the emergency room in February 2019 with stomach and back problems, testifying that she "couldn't eat," but she was not admitted to the hospital. (ECF No. 43-4, PageID #331–32; ECF No. 57-4, PageID #752–53.)  She did not work for six weeks and started seeing a counselor within the first week of the disclosure. (ECF No. 43-4, PageID #331; ECF No. 57-4, PageID #752.)  Sgt. Doe testified that she retained a lawyer shortly before she started seeing a psychologist after the disclosure. (ECF No. 43-4, PageID #328; ECF No. 57-4, PageID #748.)  Previously, she had never had psychological treatment (*id*.), but she suffered from depression for the first six months to a year afterward (ECF No. 46, PageID #366; ECF No. 51-2, PageID #529). She now sees two mental health professionals.  (ECF No. 43-4, PageID #332; ECF No. 57-4, PageID #753.)  One prescribes medications, and the other offers counseling services.  (*Id*.)

After six weeks, Sgt. Doe returned to work.  (ECF No. 43-4, PageID #333; ECF No. 57-4, PageID #754.)  To avoid running into Officer Nixon, she does not accept overtime hours.  (*Id*.)  She testified that she is now irritable and has trouble focusing on work.  (*Id*.)  During the course of this lawsuit, she filed for disability to leave the police department due to post-traumatic stress related to this injury and for an unrelated physical injury.  (ECF No. 43-4, PageID #338; ECF No. 57-4, PageID #759.)

Officer Nixon was terminated for disclosing the information in Sgt. Doe's personnel file.  (ECF No. 43-4, PageID #330, #337; ECF No. 57-4, PageID #751, #785.)  He went to work as a deputy in the Ashland County Sherriff's Department from about August 2019 to February 2020, when he returned to his position in Mansfield after prevailing in the grievance from his termination.  (ECF No. 47, PageID #379; ECF No. 51-3, PageID #542; ECF No. 43-2, PageID #277.)   He testified that the basis for his restoration is that "[a]ll the policy violations against me were found unsustained.  There was no supporting evidence."  (ECF No. 47, PageID #380; ECF No. 51-3, PageID #543; ECF No. 43-2, PageID #277.)

### STATEMENT OF THE CASE

Plaintiff Jane Doe filed suit and asserts causes of action for (1) violation of her substantive due-process right to privacy under the Fourteenth Amendment; (2) false light; (3) invasion of privacy and public disclosure of private facts; (4) slander; and (5) intentional infliction of emotional distress.  (ECF No. 27, ¶¶ 27–57, PageID #143–46.)  Plaintiff's husband joins in the complaint, asserting a claim for loss of consortium.  (*Id.*, ¶¶ 58–59, PageID #146.)

After amendment of the complaint, the City of Mansfield and Mr. Remy moved for judgment on the pleadings.  (ECF No. 32.)  When the case was re-assigned, the parties had completed discovery and requested a schedule for summary judgment briefing, which incorporated the arguments for judgment on the pleadings the City and Mr. Remy made.  (Minute Order, Jan. 28, 2021.)

Plaintiff Jane Doe moves for partial summary judgment.  (ECF No. 43; ECF No. 57.)  Plaintiffs seek summary judgment on liability related to all claims except the consortium claim, which rises or falls with the other claims.  Officer Nixon moves for summary judgment (ECF No. 50; ECF No. 51), and Defendants City of Mansfield and Mr. Remy move for summary judgment (ECF No. 49).

## ANALYSIS

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  On a motion for summary judgment, "the judge's function is not [] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  "The party seeking summary judgment has the initial burden of informing the court of the basis for its motion" and identifying the portions of the record "which it believes demonstrate the absence of a genuine issue of material fact."  *Tokmenko v. MetroHealth Sys.*, 488 F. Supp. 3d 571, 576 (N.D. Ohio 2020) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  Then, the nonmoving party must "set forth specific facts showing there is a genuine issue for trial."  *Id.* (citing *Anderson*, 477 U.S. at 250).

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the Court determines "whether the evidence presents a sufficient disagreement to require submission to a jury" or whether the evidence "is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52. In doing so, the Court must view evidence in the light most favorable to the non-moving party. *Kirilenko-Ison v. Board of Educ. of Danville Indep. Schs.*, 974 F.3d 652, 660 (6th Cir. 2020) (citing *Matsushita Elec. Indus. Co.*, 475 U.S. at 587).

If a genuine dispute exists, meaning "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," summary judgment is not appropriate. *Tokmenko*, 488 F. Supp. 3d at 576 (citing *Anderson*, 477 U.S. at 250). However, if "the evidence is merely colorable or is not significantly probative," summary judgment for the movant is proper. *Id.* The "mere existence of some factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Anderson*, 477 U.S. at 247–48).

"Just as a plaintiff may not rely on conclusory allegations to proceed past the pleading stage, so too a plaintiff may not rely on conclusory evidence to proceed past the summary-judgment stage." *Viet v. Le*, 951 F.3d 818, 823 (6th Cir. 2020) (citations omitted). "Conclusory statements unadorned with supporting facts are insufficient

to establish a factual dispute that will defeat summary judgment." *Id.* (quoting *Alexander v. CareSource*, 576 F.3d 551, 560 (6th Cir. 2009).

## I.    Substantive Due Process Privacy Violation

Plaintiff claims the City and Mr. Remy violated her Fourteenth Amendment privacy rights by disclosing Jane Doe's private information to Officer Nixon by way of her unredacted personnel file.  (ECF No. 27, ¶ 35, PageID #144.)  Plaintiff moves for summary judgment on this claim against Mr. Remy.  (ECF No. 43-1, PageID #264; ECF No. 57-1, PageID #679.)   Mr. Remy and the City also move for summary judgment.  (ECF No. 49, PageID #429, #438.)

To succeed on her claim against Mr. Remy under 42 U.S.C. § 1983, Plaintiff must prove that (1) Mr. Remy acted under color of State law and (2) the offending conduct deprived Plaintiff of rights federal law secures.  *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998) (citation omitted).  As for her claim against the City, "[t]o succeed on a § 1983 claim against a local government, the plaintiff must also prove that the injury about which she complains was caused by an unconstitutional government policy or custom."  *Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008) (citing *Monell v. Department of Soc. Servs.*, 436 U.S. 658, 694 (1978)).

Because Mr. Remy was acting in his official capacity as the Human Resource Director for the City when he turned over Sgt. Doe's personnel file (ECF No. 43-3, PageID #304), there is no dispute he was acting under color of State law.  Accordingly, the Court turns to whether a constitutional violation occurred.

### I.A. Plaintiff's Constitutional Privacy Rights

Broadly speaking, the Fourteenth Amendment protects a person's privacy in different ways. *Bloch*, 156 F.3d at 683. At issue in this case is the protection of "an individual's right to control the nature and extent of information released about that individual." *Id.* (citing *Whalen v. Roe*, 429 U.S. 589, 599–600 (1977); *Nixon v. Administrator of Gen. Servs.*, 433 U.S. 425, 457 (1977); *Kallstrom v. City of Columbus*, 136 F.3d 1055 (6th Cir. 1998)). The Sixth Circuit narrowly construes the holdings of *Whalen* and *Nixon* to extend this right, which it refers to as the right to informational privacy, "only to interests that implicate a fundamental liberty interest." *Id.* at 684 (citing *J.P. v. DeSanti*, 653 F.2d 1080, 1090 (6th Cir. 1981); *Kallstrom*, 136 F.3d at 1061). Such an interest involves "rights that can be deemed 'fundamental' or 'implicit in the concept of ordered liberty.'" *DeSanti*, 653 F.2d at 1090.

Thus far, the Sixth Circuit has recognized only two instances of informational privacy that implicate a fundamental liberty interest: (1) a release of information that could lead to bodily harm, *Kallstrom*, 136 F.3d at 1061, and (2) the release of information of a sexual, personal, and humiliating nature, *Bloch*, 156 F.3d at 684. Where the information disclosed falls into one of those two categories, a court must "balance the government's interest in disseminating the information against the [Plaintiff's] right to information privacy" to determine whether the informational right to privacy has been violated. *Jones v. City of Brunswick*, 704 F. Supp. 2d 721, 742 (N.D. Ohio 2010) (quoting *Bloch*, 156 F.3d at 685).

14

### I.A.1. Privacy Interest

Plaintiff argues that the disclosure at issue was of a sexual, personal, and humiliating nature and is, therefore, protected as a fundamental liberty interest under *Bloch*. (ECF No. 43-1, PageID #267; ECF No. 57-1, PageID #682.)  In *Bloch*, the plaintiff was raped by an unknown assailant.  After many months with no apparent progress in the investigation, the plaintiff and her husband criticized investigators and the sheriff personally.  In response, the sheriff released highly personal and extremely humiliating details of the rape.  The court held that the plaintiff pled a fundamental constitutional right to privacy "in preventing government officials from gratuitously and unnecessarily releasing the intimate details of the rape where no penological purpose is being served" sufficient to withstand a motion to dismiss.  *Bloch*, 156 F.3d at 686.  In so holding, the court recognized an individual right to informational privacy.  *Id.* at 683.  In subsequent cases, the Sixth Circuit has confirmed that *Bloch* acknowledges a constitutional privacy right with respect to information that is "sexual, personal, and humiliating" in nature.  *Lee v. City of Columbus*, 636 F.3d 245, 260 (6th Cir. 2011) (quoting *Lambert v. Hartman*, 517 F.3d 433, 440 (6th Cir. 2008) (citing *Bloch*, 153 F.3d at 685)).  This is the fundamental right on which Plaintiff bases her claim.

A reasonable jury can find that the disclosure at issue, on its face, revealed information of a sexual, personal, and humiliating nature—even assuming it does not relate to childhood sexual abuse as Plaintiff claims.  The information revealed in *Bloch* involved "highly personal and extremely humiliating" details of a rape that the

15

victim plaintiff had not even shared with her husband. *Bloch*, 156 F.3d at 676. Similarly, the information disclosed here relates to the sexual acts of a minor that a reasonable jury could find "fall outside the realm of 'conventional' practices which are generally accepted without controversy, ridicule, or derision" and are, therefore, humiliating. *Ray v. Himes*, No. 2:18-cv-272, 2019 WL 11791719, at *8 (S.D. Ohio Sept. 12, 2019) (citation omitted). The information is undoubtedly personal to Plaintiff and, as in *Bloch*, something Sgt. Doe kept from her husband until after its disclosure. (ECF No. 43-4, PageID #330, #337; ECF No. 57-4, PageID #751, #758.) Accordingly, the disclosure at issue implicates Plaintiff's informational privacy rights under the Fourteenth Amendment, and a reasonable jury could find the disclosure involved information of a personal, sexual, and humiliating nature.

Mr. Remy argues, correctly, that an informational privacy right arises only where the interest at stake implicates a fundamental right and that the Supreme Court has deemed fundamental matters touching on sexuality or choices about sex, marriage, procreation, contraception, family relationships, child rearing, and education. (ECF No. 49, PageID #433; ECF No. 54, PageID #639.) He maintains that the information disclosed does not fall into any of those categories and that the facts here are distinguishable from *Bloch* such that the disclosure does not implicate any informational privacy right.

In essence, Mr. Remy would limit the constitutional right identified in *Bloch* to the particular facts of that case; specifically, the disclosure of "gruesome details regarding a rape attack that were voluntarily disclosed by a government official, in

retaliation for the victim's criticism of the criminal investigation." (ECF No. 49, PageID #434–35.)  He contends that *Bloch* did not create a general right to the nondisclosure of merely sensitive or intimate information and that the information volunteered during Plaintiff's pre-hiring polygraph exam is not constitutionally protected because it does not relate to sexuality or family life.  (*Id.*, PageID #433.)

Mr. Remy does not provide any binding authority limiting the privacy right in *Bloch* to humiliating details of a rape or to personal, sexual, and humiliating information revealed at a retaliatory official press conference.  Nor has the Court's research located any.  Defendant is correct that *Bloch* did not create a general right to informational privacy in all sensitive or intimate information.  But *Bloch* also did not create a privacy right limited to the particular facts before it.  To the contrary, the Sixth Circuit has confirmed that *Bloch* acknowledged a right to privacy in "intimate matters" of a "sexual, personal, and humiliating nature."  *Lambert*, 517 F.3d at 443 (holding that the disclosure of financial information did not implicate the fundamental privacy interest acknowledged in *Bloch*).  Although the disclosure and facts here differ from those in *Bloch*, the privacy right in "sexual, personal, and humiliating" information still applies.  *Lambert*, 517 F.3d at 440.  And a reasonable jury could, and may well, conclude that the information disclosed here was sexual, personal, and humiliating.  Indeed, it relates to the conduct of a minor.

Defendant also relies on *Mattox v. City of Forest Park*, 183 F.3d 515, 522 (6th Cir. 1999).  (ECF No. 49, PageID #436.)  *Mattox* involved a First Amendment retaliation claim that required the court to consider whether the "plaintiffs

sufficiently allege[d] [a] violation of a constitutionally or statutorily protected right[.]" *Id.* at 520. There, a member of city council who was one of the plaintiffs initiated an investigation into the fire department after receiving complaints from several firefighters, including the other plaintiff. *Id.* at 517. The defendants prepared a report and a video overview of the report. *Id.* at 518. The report was made available to the press and general public, and the video was "shown on local-access television as many as nine times just prior to the" election in which the plaintiff member of city council was running to retain her seat. *Id.* Subsumed in the 690-page report was information about the plaintiff firefighter's sexual relations with some of her colleagues and information that "touched on a traumatic childhood incident." *Id.* at 522–23. That sensitive information about the plaintiff firefighter was not included in the introduction or overview sections of the report or in the overview video. *Id.* at 523.

In the context of a First Amendment retaliation claim, the *Mattox* Court considered whether the dissemination of that information rose to the level of the disclosures at issue in *Bloch* and determined that it did not. *Id.* at 522–23. The court noted that the "traumatic childhood incident was not the focus of the report, or of the investigation, or even of the questions being asked in the interview." *Id.* at 523. Rather, the plaintiff volunteered information about the traumatic event "by way of analogy as an aside during a legitimate line of questioning" contained in the report. *Id.* Although the *Mattox* Court emphasized the nature of the disclosure in addition to its content, it did so to determine whether the disclosure was retaliatory under the

First Amendment, which is not at issue here.  Further, recognizing that the disclosure in *Mattox* (not described in detail there) presented a close question, the court held that the disclosures were not the focus of the report and did not rise to the level of those in *Bloch*.  *Id*. at 522–23.

Relying on *Mattox*, Defendant argues that the information revealed about Plaintiff falls short of the disclosure in *Bloch* and that "information in background profiles is not constitutionally protected."  (ECF No. 49, PageID #436.)  Neither *Bloch* nor *Mattox* support the proposition Defendant advances.  As for the comparison to *Bloch*, as already discussed, a reasonable jury could find that the information at issue here is sufficiently sexual, personal, and humiliating to rise to the level of a violation of Sgt. Doe's information privacy rights.  As for *Mattox*, there is no indication that the traumatic childhood incident involved personal, sexual, and humiliating acts or that the revealing personal statements disclosed took place before adulthood and bear any resemblance to the disclosures in *Bloch* or this case.  And unlike *Mattox*, the record shows that the disclosure at issue here was a focus—if not the focus—of Officer Nixon's publicizing of Sgt. Doe's personnel file following its disclosure.

Finally, Defendant directs the Court to cases where the Sixth Circuit declined to find an informational privacy right in financial records, social security numbers, and medical records.  (ECF No. 49, PageID #434.)  But these cases bear no resemblance to the disclosure at issue here.  Plaintiff does not claim an informational privacy right in similar information.  In short, the excerpt from the polygraph report

at issue involves information that is not merely intimate and sensitive, but also permits a reasonable jury to find it is sexual, personal, and humiliating.

### I.A.2. Narrowly Tailored to a Compelling State Interest

Still, to establish a constitutional violation, the Court must balance the privacy interest at issue against Defendants' interest in making the disclosure. *Bloch*, 156 F.3d at 684. The City's disclosure "will be upheld under the substantive due process component of the Fourteenth Amendment only where the governmental action furthers a compelling state interest, and is narrowly drawn to further that state interest." *Kallstrom*, 136 F.3d at 1064 (citation omitted).

### I.A.2.a. Compelling Interest

Defendant argues that the disclosure did not violate the Fourteenth Amendment because the information disclosed is subject to disclosure as a public record under Section 149.43 of the Ohio Revised Code, Ohio's Public Records Act. (ECF No. 49, PageID #436.) Ohio's Public Records Act is construed "liberally in favor of broad access, and any doubt is resolved in favor of disclosure of public records." *State ex rel. Cincinnati Enquirer v. Hamilton Cnty.*, 75 Ohio St.3d 374, 1996-Ohio-214, 662 N.E.2d 334, ¶ 11 (1996). The Act defines public records as "records kept by any public office, including, but not limited to, state, county, city, village, township, and school district units" and goes on to list several categories that are not public records, such as medical records, adoption records, DNA records, or intellectual property records. Ohio Rev. Code § 149.43(A)(1).

Plaintiff maintains that the disclosure did not serve a compelling interest because the particular information at issue does not promote accountability of the government to the public. (ECF No. 43-1, PageID #270; ECF No. 57-1, PageID #685.) But Ohio law treats the "personnel records of city employees a[s] public records [that] are subject to disclosure" under the Act. *State ex rel. Lorain Journal Co. v. City of Lorain*, 87 Ohio App. 3d 112, 115, 621 N.E.2d 894, 896 (Ohio Ct. App. 1993) (ordering police department to provide newspaper with polygraph results of seven police officer applicants). Further, the Sixth Circuit "assume[s] that the interests served by allowing public access to agency records rises to the level of a compelling state interest." *Kallstrom*, 136 F.3d at 1065. In *Kallstrom*, the court explained that the compelling interest served by disclosure under the Act is "to shed light on the state government's performance, thereby enabling Ohio citizens to understand better the operations of their government" and "the workings of [their] law enforcement agencies[.]" *Id.* Under Circuit precedent, the Court agrees that the Ohio Public Records Act provides a compelling interest justifying disclosure.

### I.A.2.b. Narrowly Tailored

While Plaintiff's personnel file constitutes a public record under the Ohio Public Records Act, the information within it subject to informational privacy protection under the Fourteenth Amendment cannot be disclosed unless disclosure "narrowly serves a compelling state interest." *Kallstrom*, 136 F.3d at 1061. The question that remains is whether the disclosure of the information at issue narrowly served the compelling governmental interest. Narrow tailoring "turn[s] on whether

21

it is the least restrictive and least harmful means of satisfying the government's goal . . . ." *United States v. Brandon*, 158 F.3d 947, 960 (6th Cir. 1998).

Plaintiff argues that the disclosure here did not narrowly serve the compelling interest of complying with the disclosure requirements of the Ohio Public Records Act. (ECF No. 43-1, PageID #270; ECF No. 57-1, PageID #685.) In *Kallstrom*, the city argued that the Act required the disclosure of police offers' names, home addresses, phone numbers, family members' names, and driver's licenses to criminal defense counsel who represented individuals associated with a violent gang against whom the officers had testified. *Kallstrom*, 136 F.3d at 1065. The court disagreed that the disclosure was narrowly tailored, reasoning that passing the personal information into the hands of defense counsel who shared it with his clients did not "in any way increase[] public understanding of the City's law enforcement agency[.]" *Id.*

Here, Mr. Remy reviewed the personnel file, determined that redactions were not necessary under State law, and disclosed the file in full to Officer Nixon. The record shows that Mr. Remy did not even consider Sgt. Doe's informational privacy interest protected under the Fourteenth Amendment or whether any means short of full disclosure of the information at issue, such as redaction or inspection without copying, would permit a narrow tailoring of any required disclosure.

Mr. Remy relies on the Ohio Supreme Court's recent decision in *State ex rel. Summers v. Fox*, 163 Ohio St. 3d 217, 2020-Ohio-5585, 169 N.E.3d 625, to defend against Plaintiff's informational privacy claim. There, a prosecutor responded to a

request for records relating to the prosecution of a defendant for sexual battery. His file included a victim's detailed statement, including graphic sexual content, describing how the defendant coerced her into a sexual relationship in a different case in a different county. That information ended up on a Facebook page the defendant's parents hosted seeking to expose what they considered unjust prosecutions of their son. Then, the defendant's father made formal public records requests, which were denied. On a writ of mandamus to compel compliance with the records request, the Ohio Supreme Court addressed various substantive and procedural issues, including mootness and the ability of a parent to obtain records the statute bars the defendant from directly obtaining, among others. In this context, the Ohio Supreme Court distinguished *Bloch* on the ground that it "is not a public-records case and it did not create the categorical exception to disclosure under federal law" under Section 149.43(A)(1)(v) of Ohio's Public Records Act. *Id.* at ¶ 41.

Based on *Summers*, though decided after the events giving rise to this lawsuit, Mr. Remy argues that Plaintiff's personnel file is a public record and was properly disclosed under State law. (ECF No. 49, PageID #437.) Unlike *Summers*, this case is not a public records case under State law. Rather, the Fourteenth Amendment, to which the Ohio Public Records Act must yield under the Supremacy Clause, governs the disclosure in this case. Admittedly, *Summers* and *Bloch* might, in certain circumstances in the future, create conflicting standards governing responses to public records requests. For that reason, one can hope that the Ohio Supreme Court and the Sixth Circuit will reconcile their competing views should cases such as this

23

prove more common than the case law suggests.  On the record presented, however, Mr. Remy, a trained lawyer and human resources professional, failed to consider Sgt. Doe's longstanding informational privacy interests.  Disclosure of her personnel file without any redaction of the sexual, personal, and humiliating information at issue was not narrowly tailored to serve a compelling governmental interest.

### I.B.  Qualified Immunity

Mr. Remy argues that he is entitled to qualified immunity on Plaintiff's individual capacity claim against him.  (ECF No. 49, PageID #429.)  Qualified immunity shields law enforcement officers and public officials against suit where their conduct does not violate clearly established statutory or constitutional rights of which a reasonable official would be aware.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Barnes v. Wright*, 449 F.3d 709, 715 (6th Cir. 2006).  Beyond the benefit of guarding against potentially disabling threats for civil damages, the doctrine protects public officials from undue interference in the performance of their duties.  *Dickerson v. McClellan*, 101 F.3d 1151, 1157 (6th Cir. 1996).  "[T]he issue whether qualified immunity is applicable to an official's actions is a question of law."  *Summers v. Leis*, 368 F.3d 881, 885 (6th Cir. 2004).

To determine if qualified immunity bars suit, the Court employs a three-step inquiry.  First, the Court must determine if a constitutional violation occurred.  *Barnes*, 449 F.3d at 715 (quotation omitted).  Second, the Court determines if the right was clearly established and one which a reasonable officer would have known at the time.  *Id.* (quotation omitted).  Third, the Court determines if the plaintiff has identified sufficient evidence to show that the defendant's conduct was objectively

24

reasonable in light of the clearly established right. *Id.* (quotation omitted); *Binay v. Bettendorf*, 601 F.3d 640, 651 (6th Cir. 2010). Because the Court determines that a reasonable jury could find that the disclosure at issue involves information of a sexual, personal, and humiliating nature that meets the Circuit's standard for an informational privacy violation under the Fourteenth Amendment, the Court only considers the other two prongs of the qualified-immunity analysis.

### I.B.1. Clearly Established Right

When Mr. Remy disclosed the information at issue, the informational privacy right at issue was clearly established. "A right is 'clearly established' when its 'contours . . . [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Guertin v. Michigan*, 912 F.3d 907, 932 (6th Cir. 2019) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). To determine whether a right is clearly established to provide "fair warning" that the conduct at issue was unconstitutional, courts "look first to decisions of the Supreme Court, then to decisions of [the Sixth Circuit] and other courts within our circuit, and finally to decisions of other circuits." *Id.* (quotations omitted). The "precise situation" need not have previously been held unlawful, but "existing precedent must have placed the . . . constitutional question beyond debate." *Id.* (quotation omitted); *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015)). "Finally, 'an action's unlawfulness can be 'clearly established' from direct holdings, from specific examples describing certain conduct as prohibited, or from the general reasoning that

a court employs.'" *Guertin*, 912 F.3d at 932 (quoting *Baynes v. Cleland*, 799 F.3d 600, 612 (6th Cir. 2015)).

In *Bloch*, the court affirmed the dismissal of the plaintiff's privacy claim, finding that the sheriff was not on notice that such a privacy right existed at the time of the alleged violation. *Bloch*, 156 F.3d at 687. But the Sixth Circuit advised that "any future violation will not allow an official . . . to claim the lack of reasonable notice that is necessary to sustain a defense of qualified immunity." *Id.* *Bloch* was decided in 1998, some twenty years before Mr. Remy disclosed the information at issue. Subsequent cases from the Circuit confirm that *Bloch* reads *Whalen* and *Nixon* as establishing an informational privacy right that protects "sexual, personal, and humiliating" information. *Lee*, 636 F.3d at 260; *Lambert*, 517 F.3d at 440. He cannot claim that Plaintiff's right to informational privacy was not clearly established at the time of disclosure.

### I.B.2. Objectively Reasonable

Because Sgt. Doe's informational privacy right was clearly established well before the events at issue, a reasonable jury could find that Mr. Remy's conduct on the facts and circumstances in the record was not objectively reasonable. The record shows that Mr. Remy gave no consideration to Sgt. Doe's informational privacy rights. That failure, the Court cannot say, is objectively reasonable. Moreover, the record demonstrates that Mr. Remy received the request on December 10, 2018 and completed it by December 17, 2018. (*See, e.g.*, ECF No. 43-5, PageID #342; ECF No. 48, PageID #410, #423.) He was a trained lawyer and a human resources

26

administrator responding in an office setting to an open records request over several days.  Unlike a police officer responding to a dynamic scene in real time, Mr. Remy had time to consider whether the disclosure would violate Sgt. Doe's constitutional privacy rights, but did not do so.  For these reasons, Mr. Remy is not entitled to qualified immunity, and Plaintiff may present her federal constitutional claim against Mr. Remy in his individual capacity to a jury to determine whether the information disclosed is sexual, personal, and humiliating as a matter of fact and whether Mr. Remy's failure to consider Sgt. Doe's information privacy rights was objectively reasonable.

### I.C.    Official Capacity Claim Against Mr. Remy

Defendants argue that, to the extent Plaintiffs bring their claim against Mr. Remy in his official capacity, the City is the real party in interest.  (ECF No. 49, PageID #438.)  "[O]fficial-capacity suits . . . represent only another way of pleading an action against an entity of which an officer is an agent."  *McPherson v. Cuyahoga Cnty.*, No. 1:20-cv-00639, 2021 WL 2841582, at *12 (N.D. Ohio July 8, 2021) (quoting *Everson v. Leis*, 556 F.3d 484, 493 n.3 (6th Cir. 2009) (quoting *Monell*, 436 U.S. at 690 n.55)).  Because Plaintiff brought her claim against the City, Mr. Remy is entitled to summary judgment to the extent the claim is also brought against him in his official capacity.

### I.D.    *Monell* Claim Against the City

Plaintiff asserts her Fourteenth Amendment claim against the City of Mansfield under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).  The City moves for summary judgment on that claim.  (ECF No. 49, PageID #439.)  To be

liable under *Monell*, the entity, "through its deliberate conduct," must have been "the 'moving force' behind the injury alleged" and have "intentionally" deprived the plaintiff of a federally protected right. *Board of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404–05 (1997). Local governing bodies can be sued under Section 1983 only where an official policy or custom causes the alleged constitutional violation. *Johnson v. Hardin Cnty.*, 908 F.2d 1280, 1285 (6th Cir. 1990) (citing *Monell*, 436 U.S. at 690–91).

An official policy includes "a policy statement, ordinance, regulation, or decision officially adopted and promulgated . . . ." *Johnson*, 908 F.2d at 1285 (quoting *Monell,* 436 U.S. at 690). In contrast, a custom "has not received formal approval through . . . official decisionmaking channels." *Id.* (quoting *Monell* at 690–91). "Before a custom can be the basis for a civil rights violation, the custom must be 'so permanent and well settled as to constitute a 'custom or usage' with the force of law.'" *O'Brien v. City of Grand Rapids*, 23 F.3d 990, 1004 (6th Cir. 1994) (quoting *Feliciano v. Cleveland*, 988 F.2d 649, 655 (6th Cir. 1993) (quoting *Monell*, 436 U.S. at 691)). Under *Monell* and its progeny, there are four ways a plaintiff can demonstrate a policy or custom that could allow for municipal liability:

> (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations.

*Lipman v. Budish*, 974 F.3d 726, 747 (6th Cir. 2020) (quoting *Burgess*, 735 F.3d at 478).

28

The City argues that it is entitled to summary judgment on Plaintiff's *Monell* claim because there is no evidence of an underlying constitutional violation (ECF No. 49, PageID #440) and because Mr. Remy's conduct cannot be found to shock the conscience (*Id.*, PageID #441–42). In opposition to the City's motion, Plaintiff argues that Mr. Remy acted with deliberate indifference and that there is a genuine issue of material fact as to whether he had authority from the City sufficient to create liability for his actions. (ECF No. 52, PageID #613.)

### I.D.1. Underlying Constitutional Violation

For the reasons explained above, a reasonable jury could find that the disclosure of the information at issue violated Sgt. Doe's informational privacy rights the federal Constitution protects. Accordingly, the Court need not address the City's argument that no underlying constitutional violation occurred further.

### I.D.2. Deliberate Indifference

Initially, the City argued that Plaintiff's *Monell* claim must fail because there is no evidence of a constitutional violation that "shocks the conscience." But as Plaintiff correctly points out, the "shocks the conscience" standard does not apply where cases do not involve excessive force or physical injury. (ECF No. 52, PageID #611 (citing *Waters v. Drake*, 105 F. Supp. 3d 780, 799–800 (S.D. Ohio 2015).) In *Waters*, the court conducted an extensive review of case law regarding the proper standard that applies to governmental conduct for a *Monell* claim that does not involve the use of physical force. *Waters*, 799–800. The Court agrees with the conclusion of the *Waters* Court that the "'shocks the conscience' standard should be

limited to the exclusive context of cases involving the use of physical force." *Id.* at 801; *see also Lininger v. St. Mary's City Sch. Dist. Bd. of Educ.*, No. 3:16-cv-2853, 2019 WL 188050, at *10 (N.D. Ohio, Jan. 14, 2019).

Defendants ultimately agree that the more appropriate standard is one of deliberate indifference.  (ECF No. 54, PageID #643.)  "'Deliberate indifference' is the reckless disregard of a substantial risk of serious harm; mere negligence or even gross negligence, will not suffice." *Santiago v. Ringle*, 734 F.3d 585, 591 (6th Cir. 2013).

The record before the Court shows that the City's policy—whether officially or through Mr. Remy's custom or practice—for reviewing and redacting files in response to public records requests is limited to consideration of State law, specifically Ohio's Public Records Act, and some federal laws such as HIPAA, but fails to account for the well-established constitutional right of informational privacy.  The City maintains a policy about redaction in a personnel manual.  (ECF No. 53, PageID #629.)  Mr. Remy testified that the City's policy is to not redact a personnel file where an officer requests his own file, but to redact where an officer requests another's file.  (ECF No. 43-3, PageID #305; ECF No. 57-3, PageID #721.)  When reviewing Plaintiff's personnel file after receiving Officer Nixon's request for it, Mr. Remy testified that "my policy was to read . . . police personnel documents so that I could properly redact based upon, on [Section] 149.43 and, and the—and the exemptions or exceptions to it."  (*Id.*, PageID #309.)  As for the disclosure at issue, Remy testified that "[t]here was nothing in this statement that indicated to me that it fit into any exception within

the Public Records Act." (*Id.*, PageID #312; ECF No. 57-3, PageID #729; *see also* ECF No. 53, PageID #632.) For that reason, he did not redact the information.

Mr. Remy's testimony confirms that the City disclosed Plaintiff's personnel file under Ohio's Public Records Act, without regard to the federal Constitution's protections for informational privacy. Therefore, the record creates a genuine issue of material fact whether Mr. Remy's practice of reviewing and redacting, or failing to do so, rises to the level of a policy or custom of the City and whether his failure to consider the constitutional limitations on disclosure was an act of deliberate indifference to Plaintiff's constitutional rights. Accordingly, the City is not entitled to summary judgment on Plaintiff's *Monell* claim.

### I.D.3. Mr. Remy's Policymaking Authority

In opposition to the City's motion, Plaintiff also argues that the record presents a genuine dispute of material fact whether Mr. Remy had authority from the City sufficient to set City policy and thereby create municipal liability for his actions. (ECF No. 52, PageID #613.) In reply, the City maintains that it cannot be liable under *Monell* because of an absence of evidence that Mr. Remy had sufficient authority to establish municipal policy. (ECF No. 54, PageID #645.) Although the parties argue the issue as a matter of fact, "[w]hether a governmental official is vested with the authority to make official policy is a question of state law." *DePiero v. City of Macedonia*, 180 F.3d 770, 786 (6th Cir. 1999) (citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989)). The City cites no statute or case law that final authority for the policy or practice at issue did not rest with Mr. Remy. Moreover, review of the

record on summary judgment shows that Mr. Remy testified several times about the City's policy for review, redaction, and disclosure of an employee's personnel file. (*See, e.g.*, ECF No. 57-3, PageID #721–22, #726.)  At no time did Mr. Remy even suggest he did not have the type of decision-making authority that might avoid *Monell* liability for the City.  To the contrary, he described the City's policy as "my policy," suggesting (at least when construed in favor of the non-movant) that he had the authority to bind the City in this regard.  Based on the record, including Mr. Remy's deposition testimony, the City is not entitled to a summary judgment on this basis.

## II.  False Light

Plaintiff concedes that this claim fails in light of the Ohio Supreme Court's decision in *Summers*, 2020-Ohio-5585, ¶ 41.  (ECF No. 52, PageID #598, #614; ECF No. 58, PageID #779, #795.)  Accordingly, the Court need not consider the claim.  *Cf. Maxwell v. United States*, 617 F. App'x 470, 477 (6th Cir. 2015).

## III.  Invasion of Privacy/Public Disclosure of Private Facts

Plaintiff concedes that this claim fails in light of the Ohio Supreme Court's decision in *Summers v. Fox*, 2020-Ohio-5585, ¶ 41.  (ECF No. 52, PageID #598 & #614; ECF No. 58, PageID #779, #795.)  Accordingly, the Court need not consider it.

## IV.  Slander

Plaintiff concedes that this claim fails in light of the Ohio Supreme Court's decision in *Summers*, 2020-Ohio-5585, ¶ 41.  (ECF No. 52, PageID #598 & #614; ECF No. 58, PageID #779, #795.)  Accordingly, the Court need not consider it.

## V.  Intentional Infliction of Emotional Distress

Plaintiff alleges that Officer Nixon intentionally caused her to suffer emotional distress.  (ECF No. 27, ¶¶ 53–57, PageID #146.)   Plaintiff and Officer Nixon each move for summary judgment on this claim.  (ECF No. 43-1, PageID #261; ECF No. 57-1, PageID #676; ECF No. 50-1, PageID #470; ECF No. 51-1, PageID #507.)  To succeed on this claim, Plaintiff must prove four elements under Ohio law:

> (1)    the defendant intended to cause emotional distress or knew or should have known that its conduct would result in serious emotional distress to the plaintiff;
>
> (2)    defendant's conduct was outrageous and extreme beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community;
>
> (3)    defendant's conduct was the proximate cause of plaintiff's psychic injury; and
>
> (4)    plaintiff's emotional distress was serious and of such a nature that no reasonable person could be expected to endure it.

*Flagg v. Staples the Office Superstore E., Inc.*, 138 F. Supp. 3d 908, 919–20 (N.D. Ohio 2015) (quoting *Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1110 (6th Cir. 2008) (quoting *Ekunsumi v. Cincinnati Restoration, Inc.*, 120 Ohio App.3d 557, 698 N.E.2d 503, 506 (Ohio Ct. App. 1997)).

Plaintiff argues that she has adduced sufficient evidence on each element and is entitled to summary judgment.  (ECF No. 43-1, PageID #261–64; ECF No. 57-1, PageID #676–79.)  Officer Nixon argues that he could not have engaged in outrageous conduct merely by disclosing truthful information available as a public record and that he could not have acted knowingly, intentionally, or maliciously.  (ECF No. 50-1, PageID #470–73; ECF No. 51-1, PageID #507–10.)   The crux of the parties'

33

disagreement is whether liability for intentional infliction of emotional distress attaches to disclosure of true information that was voluntarily disclosed by Plaintiff then incorporated into a public record and lawfully obtained pursuant to a public records request. Officer Nixon argues he could not have had the requisite intent or engaged in outrageous conduct where he merely disclosed information available in Plaintiff's personnel file that any member of the public could have requested and viewed. Plaintiff counters that information lawfully acquired can still be put to actionable use and that Officer Nixon used her personnel file tortiously.

This formulation of the dispute misses the mark somewhat because the disclosure at issue on its face involves the sexual conduct of a minor—whether involving childhood sexual abuse or not. Therefore, the question becomes whether Officer Nixon's disclosure to his co-workers of information involving his supervisor's sexual conduct as a minor constitutes a tort even if Officer Nixon did not know Mr. Remy's production of it may not have been proper.

### V.A. Outrageousness

Because the parties focus on the element of outrageousness, the Court begins its analysis there. Ohio defines extreme and outrageous conduct narrowly, generally requiring a "recitation of the facts to an average member of the community [to] arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Flagg*, 138 F. Supp. 3d at 920 (quoting *Yeager v. Local Union 20*, 6 Ohio St. 3d 369, 374–75, 453 N.E.2d 666 (1983)). "[M]ere insults, indignities, threats, annoyances, petty oppressions or other trivialities" do not suffice. *Yeager*, 6 Ohio St. 3d at 375. To be liable, the conduct must have been "so outrageous in character, and so extreme in

degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Flagg*, 138 F. Supp. 3d at 919 (quoting *Long v. Ford Motor Co.*, 193 Fed. App'x. 497, 503 (6th Cir. 2006)).

Officer Nixon believed he lawfully obtained the information about Sgt. Doe he disclosed pursuant to a public records request.  He shared that information with a sergeant who assisted Officer Nixon in making the public records request and who asked Officer Nixon about the contents of Plaintiff's personnel file.  He also shared the information with two other officers and some of his personal friends outside the police department.  After one of the officers advised Officer Nixon not to share the information with anyone else at work, he heeded that advice and only shared the information with a few personal friends or family members.  Officer Nixon also testified that he shared the information out of concern that Plaintiff was unfit to perform her professional duties.  A reasonable jury might credit that explanation or find it pretextual.  A reasonably jury might also find that Officer Nixon deliberately circulated the information as part of his escalating feud with Sgt. Doe.

Officer Nixon maintains that obtaining information through a public records request defeats a claim for intentional infliction of emotional distress as a matter of law.  For this proposition, he relied on two cases.  First, in *Readylink Healthcare v. Lynch*, No. 04-55890, 2006 U.S. App. LEXIS 17694, at *5 (9th Cir. July 13, 2006), the court agreed that, under California law, "the publication of true and public-record information is not outrageous conduct within the meaning of cases interpreting the tort of intentional infliction of emotional distress."  This statement came in the

context of a business dispute, the particular facts of which the opinion does not provide. Therefore, it is of little persuasive value. Second, Officer Nixon argues he lacked information about the nature of the information giving rise to Plaintiff's claim, citing *Burel v. Burel*, No. L-10-1057, 2010-Ohio-6216, ¶ 48 (Ohio Ct. App. 2010). That case involves a paternity dispute and factually has no bearing where, as here, the information on its face involves the sexual conduct of a minor.

Moreover, the use of even true information lawfully obtained remains subject to background legal constraints, such as defamation, however narrowly those limits might apply. The tort of intentional infliction of emotional distress is another. Plaintiff points to *Hale v. City of Dayton*, No. 18800, 2002 WL 191588 (Ohio Ct. App. Feb. 8, 2002), as an example of conduct less outrageous than Officer Nixon's, but which the court found sufficient for a claim of intentional infliction of emotional distress to survive summary judgment. (ECF No. 43-1, PageID #263; ECF No. 57-1, PageID #678.) In *Hale*, the defendant downloaded an internet image of an obese woman who resembled a coworker, the plaintiff, and showed it to at least fifteen other coworkers over two days, while making comments that he thought the image resembled plaintiff. *Hale*, 2002 WL 191588, at *1. The court determined that the plaintiff presented sufficient evidence that the defendant's conduct was extreme and outrageous to overcome summary judgment on her claim for intentional infliction of emotional distress. The court reasoned that the defendant showed the photo to more than a dozen coworkers, made statements suggesting that the obese woman in the photo looked like the plaintiff, and knew that his conduct would embarrass the

plaintiff in their "male-dominated body-conscious" work environment (a fire department). *Id.* at *7.

Here, Officer Nixon showed or verbally disclosed the information to one higher-ranking sergeant and two fellow officers in the workplace. Even accounting for some of the personal acquaintances with whom Officer Nixon shared the information, the total number of disclosures was less than in *Hale*. Further, there is no evidence that Officer Nixon made suggestive or embarrassing comments when he disclosed the information. To the contrary, Officer Nixon testified that he shared the information because it gave him concern about Plaintiff's fitness to perform her job duties.

On the other hand, *Hale* did not involve the disclosure of the sexual conduct of a minor. And it involved the disclosure of public information lawfully obtained. Although the disclosure here does not necessarily involve childhood sexual abuse, on its face it reveals the sexual conduct of a minor. Disclosing such conduct to colleagues and friends could be considered extreme and outrageous, that is, going "beyond all possible bounds of decency." *Flagg*, 138 F. Supp. 3d at 919. A reasonable jury could find as much, even if Officer Nixon's concern about Plaintiff's fitness as a police officer was genuine. Perhaps a jury will not find liability, as is likely. But the disputes of fact in this record would permit a jury to find that the disclosure of the sexual conduct of a minor to co-workers goes beyond the bounds of decency. Accordingly, Plaintiff's claim does not fail as a matter of law on the outrageousness element.

### V.B. The Other Elements

Nor do the other elements of the claim (intent, causation, and injury) merit summary judgment for Defendant on the facts and circumstances presented.

### V.B.1.  Intent

"The tort of intentional infliction of emotional distress does not require proof of specific intent or the use of a strict intent standard." *Kovacs v. Bauer*, 118 Ohio App. 3d 591, 596, 693 N.E.2d 1091, 1094 (Ohio Ct. App. 1996) (citing *Potter v. Troy*, 78 Ohio App. 3d 372, 382, 604 N.E.2d 828 (Ohio Ct. App. 1992)).  Officer Nixon argues that, because the disclosure related to Plaintiff's fitness for duty as a police officer, she is a public official, and her claim is subject to the actual malice standard.  (ECF No. 50-1, PageID #472; ECF No. 51-1, PageID #510.)  Police officers acting in their official capacities are public officials and are only protected from public discussion and criticism where the published statement was made with actual malice.  *Bross v. Smith*, 80 Ohio App. 3d 246, 608 N.E.2d 1175, 1180 (Ohio Ct. App. 1992) (citing *Mueller v. Storer Commc'ns*, 46 Ohio App. 3d 57, 58, 545 N.E.2d 1317, 1319 (Ohio Ct. App. 1988)).  Actual malice requires "knowledge that [the published statement] was false or [made] with reckless disregard of whether it was false or not." *Bross*, 608 N.E.2d at 1179–80 (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 281 (1964)).  Plaintiff concedes that she might be a public figure when acting within the scope of her official duties, but argues that whether Officer Nixon's disclosure related to her fitness as a police officer presents a disputed factual issue.  (ECF No. 52, PageID #616; ECF No. 58, PageID #797.)

Officer Nixon testified that he disclosed the information in Sgt. Doe's personnel file out of genuine concern that she was not fit as a police officer.  In that event, Officer Nixon argues that a higher standard requiring malice applies.  A jury may well accept

such a rationale for Officer Nixon's disclosure, but that explanation for the disclosure presents a dispute of fact.   The record also shows that Sgt. Doe and Officer Nixon had a troubled relationship at work and engaged in an escalating tit-for-tat pattern that could lead a jury to view the disclosure as intentionally embarrassing or harassing and unrelated to good-faith concerns about Sgt. Doe's fitness for duty. Further, the face of the disclosure reveals a co-worker's sexual conduct while a minor, which is highly personal and sensitive.   On these facts, reasonable finders of fact could differ as to whether Officer Nixon knew or should have known his disclosure of the information would cause Plaintiff emotional distress and whether he acted with the requisite intent.

### V.B.2. Causation and Injury

Defendant's conduct must also have caused Plaintiff's psychic injury and the injury suffered must be so serious "that no reasonable person could be expected to endure it." *Flagg*, 138 F. Supp. at 919–20 (quoting *Talley*, 542 F.3d at 1110). "The Ohio Supreme Court has described 'serious emotional distress' as 'emotional injury which is both severe and debilitating . . . [it is] found where a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances of the case.'" *Torres v. White*, 46 F. App'x 738, 756 (6th Cir. 2002) (quoting *Paugh v. Hanks*, 6 Ohio St. 3d 72, 78, 451 N.E.2d 759 (1983)). A reasonable jury could find that Officer Nixon's disclosure caused Plaintiff to suffer serious mental anguish.   After the disclosure, Plaintiff testified that she could not

work for six months, suffered depression, sought counseling, and required medication.

### V.C.   Question of Law or Question of Fact

In Ohio, "[i]t is well accepted that intentional infliction of emotional distress claims may entirely appropriately be dealt with on summary judgment or in a motion to dismiss." *Cummings v. Greater Cleveland Reg'l Transit Auth.*, 88 F. Supp. 3d 812, 821 (N.D. Ohio 2015) (quoting *Miller v. Currie*, 50 F.3d 373, 377–78 (6th Cir. 1995)). For example, "it is well-established under Ohio law that discrimination, by itself, is insufficient to support an intentional infliction of emotional distress claim." *Fuelling v. New Vision Med. Labs. LLC*, 284 Fed. App'x 247, 261 (6th Cir. 2008) (citation and quotation omitted).  The same is true where a plaintiff merely alleges "[t]ermination of employment, without more, . . . even when [sic] the employer knew that the decision was likely to upset the employee." *Jones v. Wheelersburg Local Sch. Dist.*, 2013-Ohio-3685, ¶ 42 (quotation and citation omitted).  Similarly, a claim that the defendant falsely accused the plaintiff of a crime also does not constitute extreme and outrageous conduct.  *Id.*, ¶ 43 (citation omitted).

But ruling on an intentional infliction of emotional distress claim as a matter of law is not always appropriate.  *See Miller*, 50 F.3d at 378 (reversing district court's dismissal of claim).  Plaintiff has not alleged extreme and outrageous conduct based solely on discrimination or termination of employment or other conduct that has been determined, as a matter of law, to fall short of the high standard for the tort.  For the reasons discussed, the Court cannot determine as a matter of law whether Officer Nixon's conduct was extreme and outrageous, beyond all bounds of decency, or made

40

with the requisite intent on the record before it. Accordingly, those issues are factual ones for a jury to resolve, and neither Plaintiff nor Defendant is entitled to a summary judgment on this claim.

## VI. Consortium

Loss of consortium is a derivative claim that cannot stand on its own. *See Jolly v. Dynegy Miami Fort, LLC*, 500 F. Supp. 3d 659, 673 (S.D. Ohio 2020) (citing *Paugh v. R.J. Reynolds Tobacco Co.*, 834 F. Supp. 228, 232 (N.D. Ohio 1993)) (dismissing claims for pain and suffering, loss of consortium, and punitive damages because "[t]hose claims only succeed if" the substantive claims survive). Because some of Plaintiff Jane Doe's claims survive, so too does the derivative consortium claim to the same extent.

## CONCLUSION

The Court **DENIES** Plaintiff's motion for summary judgment. The Court **GRANTS IN PART AND DENIES IN PART** the City's and Mr. Remy's motion for summary judgment. Specifically, the Court **GRANTS** Mr. Remy summary judgment on the claims brought against him in his official capacity and **DENIES** summary judgment to Mr. Remy individually and to the City. The Court **GRANTS IN PART AND DENIES IN PART** Defendant Nixon's motion for summary judgment. Specifically, the Court **GRANTS** Defendant Nixon's motion on Plaintiffs' claims other than intentional infliction of emotion distress and **DENIES** Defendant's motion with respect to that claim. The Court **DENIES AS MOOT** Defendant the City's and Mr. Remy's motion for judgment on the pleadings.

**SO ORDERED.**

41

Dated:  December 27, 2021

_____

      J. Philip Calabrese
      United States District Judge
      Northern District of Ohio